May it please the Court, my name is Ryan Norwood, and along with Ms. Amelia Bizzaro, we represent Jeff Rose, the petitioner in this case. I'd like to reserve about three minutes of my time for rebuttal, and I'll keep an eye on the clock. The prosecutor's case against Rose was misleading to the point of being false. Rose couldn't defend himself because he was arbitrarily prevented from introducing evidence that was necessary to rebut these allegations. Rose's trial violated well-established principles of due process, and the Court should grant the writ so that Rose can have a fair trial. The pattern of misleading evidence and the preclusion of defense applies to both of the major categories of evidence that was introduced against Rose at his trial, the accusations of the children and Mr. Rose's own statements. And I want to address both in the time that I have, because both are important, and I'd like to start with the accusations of the children, which is the first ground we raise in the complaint, which is the uncertified issue that the Court indicated that it wished to discuss at this hearing. The central figure in this case, there are multiple children who made accusations against Mr. Rose, but the central figure was a child who we refer to as D.A. throughout the briefing in this case. She was the first child who accused Mr. Rose, or at least told an adult about this, who got the investigation rolling. It turned out that before she had ever met Mr. Rose, she had been abused by her own father. The claims that she made against Jeff Rose as they came out at the trial were demonstrably false. For example, she claimed that she had been over at his house between 50 and 100 times, and that she had been abused on at least 20 separate occasions. But according to all of the other evidence, including her own mother, she had only been over at that house three or four times. The jury acquitted Mr. Rose of all counts involving D.A. However, it also came out at that trial that D.A. had influenced other children. In particular, she had claimed that she saw Mr. Rose molest other children who were regularly staying over at the house, and she stated that she had discussed these allegations or these purported events with these children before any adults had ever learned about this, and that, in her words, they were exchanging stories to help them remember. Before the second trial, Mr. Rose represented himself at this first trial where he was acquitted or mistrided all the charges. He was acquitted of two of the young girls. D.A. and Z.V.? Correct. Okay. And Z.V. was another child, which is actually an older childhood, also made an allegation that the evidence tended to show was either false or extremely unlikely because of the timing of it. They hung on most of the charges involving the other two girls. And the second trial, though, the jury didn't hear, heard almost nothing about D.A. or Z.V. The prosecution was allowed to present the case as if A.C. and C.C. were the only two kids involved with this. In doing so, it presented the case in a fundamentally misleading and unfair fashion that the prosecutor was able to exploit. For example, one of the issues here was a lack of corroboration for any of these claims. And the prosecutor's argument was, well, these kids, these two remaining kids, had no reason to lie or no reason to make false statements. Well, there was a reason that everybody knew about from the first trial, but Mr. Rose wasn't allowed to go into that. There was a substantial delay in reporting here. These sleepovers began in 1999. The accusations came out to the adults in July of 2002. The prosecutor's argument was, well, there was no way these kids were going to discuss this with anyone else. But in fact, from D.A., the jury could have learned that they were discussing it amongst themselves for quite some time. Before the second trial, the defense had noticed an expert named Dr. Esplin, who was a forensic child psychologist, who was an expert on child suggestibility, who could have talked about how all these factors, the children talking with each other, and also the way that they were interviewed, could have created unique issues of suggestibility and could explain why children were saying things that were not true and rebutted the prosecutor's main point. The State Court's ruling was essentially that all this, you know, the evidence of the other children was more prejudicial than probative. On its face, that ruling doesn't make sense, as D.A. is the central figure here. Having a trial without her would be like staging a production of Hamlet without having Hamlet in it.  Even more to the point, everybody recognized that D.A. was important because the prosecutor was allowed to admit her testimony at the first trial when they thought that this context would be helpful to them. I've gone through in my briefing sort of the different due process cases that are established by the Supreme Court, but the one I'd start with really is Washington v. Texas, which establishes that a State rule is arbitrary when there's a double standard involved. And that's exactly what's happening here. Nevada law lets prosecutors bring in evidence of other accusations to corroborate the credibility and for numerous other purposes under Nevada's equivalent to 404B, and it did do that at Rose's first trial. But at the second trial, when Rose's attorneys realized that this was helpful to him and wanted to do exactly the same thing, all of a sudden they couldn't do it. That's exactly the same constitutional violation that the Supreme Court recognized in Washington v. Texas. And that reason alone is a basis to grant the writ so that Mr. Rose can have a fair trial where he can introduce the full context of the statements like everybody was allowed to do at his first trial. I think we have to – this isn't a certified issue, and so I don't think the government's even had a chance to brief these issues. They will have a – according to the court's order, they'll have an opportunity to brief the issue after the argument. So at that point, I certainly – they should have a chance to address it, and I would have a chance to reply under the court's order. But what I would ask the court to do is to first grant a COA on the issue, because it is at least debatable, but then to grant relief, because the way this evidence was presented was clearly in violation of well-established constitutional principles. So the argument on the other side, of course, well, this is just state procedure. This isn't a constitutional violation. This is the judge just managing his courtroom and managing his trial. That is more or less what they said. I mean, there was never much of an explanation given for it, but what the State courts always said was more prejudicial than probative, unfair prejudice, waste of time, and so forth. And again, even if there were any merit to that argument, and I would say there is not, there still is this double standard issue, because all of this was perfectly fine for the prosecutor to get into at the first trial, when the prosecutor thought that this context would help them. Roberts. Good, because those charges were still in the case. I mean, he could bring in evidence about DA because DA was one of the purported victims. The jury acquitted. So at trial number 2, DA is not one of the purported victims that's subject to the charges. So could the State have brought in allegations of misconduct with regarding still other children in the first trial? Even if they're uncharged. There are a number of Nevada cases, and I go through them in the briefing. I think it's on page 56 or 57, where Nevada law allows you to do just that. I mean, it would be strange if, you know, Rose were to be prejudiced by the fact that he was acquitted of these charges at the first trial. I want to make clear, I'm not necessarily saying that the defense had a right to bring in the fact of the acquittals. That might present a different issue. But what we're talking about is the full context of the allegations that's necessary to explain what happened here. Roberts. Well, a real problem may be that under EPTA, you've got to find a Supreme Court case that's close enough. And even if we think that something was really outrageous, we're still locked into the proposition, okay, what Supreme Court case speaks to that? You've identified Washington as maybe the best case that speaks to this. That's the double standard case, right? Yes. And I mentioned other cases in the briefing, like Chambers as well. And I think it's even – I think there's an issue – I'm sorry. The Supreme Court – clearly established Supreme Court authority on that the defendant is entitled to put on a meaningful defense. I mean, here, it's hard to know – it's hard to – it seems to me from his perspective, it was hard to put on a meaningful defense when you couldn't have the entire context of the situation in front of the jury. Exactly. And that's – But there has to be – I'm not aware. There has to be a Supreme Court case on point on that. Well, there is a case actually on point that I cite primarily in response to the other issue involving Rose's statements, which is Crane v. Kentucky, which talks about the right to bring in the full context of evidence even if it meets a threshold level of admissibility. So that's the confession case where you're allowed to explain the context of the defendant's statements? Correct. In that case, the lower court had ruled, well, I find the statement voluntary, so that issue is decided, so you can't argue it in front of the jury. But the Supreme Court said no. I mean, that's just a threshold determination. You still get to argue the issue. And that is, I think, what's fundamentally wrong with the way that these statements are admitted at trial. I mean, in the briefing, we do raise this voluntariness issue, how there should have been this threshold determination made that the statements were voluntary. And that didn't happen because the Court never completed this Jackson v. Deno hearing that it started. But even if we agree that there isn't a threshold voluntariness issue, Mr. Rose still had a well-established right to bring in the full context of these statements that he made. And just as there was no way to talk about the children's allegations without mentioning DA, there was no way to talk about what Mr. Rose said to Gordon Moore without bringing up the fact that this involved a polygraph. Specifically, Mr. Moore claimed that he did a polygraph with Mr. Rose. And I say claimed or purported because there's substantial reason to believe that this was all a ruse. Roberts, and the dialogue leading up to the statements made by Mr. Rose, that Mr. Rose now argues, look, I had to say something to him, this is what I came up with at the time, but it wasn't true. And so you're arguing the context of that needed to be offered up to the jury as well so that the statements can be put into context. Exactly. He couldn't do that because he couldn't bring up the most important fact, which is that, I mean, Moore, you know, says, okay, I know you flunked this polygraph. I know, therefore, you must have touched the child's vagina. So either you're a child molester or maybe you did this by accident. Unless you tell me it's the latter, I'm going to assume that that was the former. And it was in that context, and with a lot of suggestibility, and this went on for pages and pages, he eventually got him to make these statements, which everybody now agrees aren't true. So that's the context that Mr. Rose needed to present to fairly explain all this, and that's what he was prevented from doing. Do you want to reserve three minutes? I would. Thank you. Thank you. Good afternoon, Your Honors. May it please the Court, Lawrence Van Dyke on behalf of the state of Nevada. Unless the court prefers me to have a different approach, what I plan to do is address first the certified issue and then address the three uncertified issues, especially the one that was discussed most this morning, Your Honors. Starting with the voluntariness of Mr. Rose's statements to Investigator Moore, Mr. Rose's main argument against, and you heard it again this morning, against submission of those statements is that this was a, quote, nothing more than a ruse to get Rose to inculpate himself at work. This is, you heard it again this morning, and it was in the opening brief on page 17. The problem with that is that courts regularly allow detectives to participate in all kinds of ruses. We see them on TV all the time, which doesn't make it right, but it happens in real life, actually, too. In the People v. May's case, the California case, courts famously upheld a conviction where detectives gave a murder suspect a completely fake lie detector test. Well, most of those cases produced confessions. Not the People v. May's case. This, I mean, this, I don't know the, I know the argument about this was all a ruse, but the part that concerns me is the argument that says, look, I can't put into context why I said what I said, which I now deny was the truth, and which nobody, the State's not charging him with what it is they extracted or Mr. Moore extracted from this dialogue. The State appears to be offering this up not as a confession, but as a way to, you know, weaken the credibility of Mr. Rose. But the problem remains that if the context of how he came to say those statements isn't put in front of the jury, and the district court kind of truncated the hearing or the, whatever you, the trial court truncated the hearing at which those statements were being examined out of what apparent was exasperation at not having the tapes, but in the context where Rose never got to cross-examine Moore, isn't there something missing? Well, Your Honor, a couple of responses to that. So I do want to talk about the hearings and such, but the People v. May's case is actually right on point from the California courts because it is actually a case where somebody was accused of murdering somebody to jack in the box, and they thought they had video, some video of the person being there, and the person said, I wasn't there at all. And then after they gave him a completely fake lie detector test and said, we think you failed. Unlike, I don't think that this was a completely fake lie detector test, but there they conceded it was just a completely, it was a total ruse. And after the detectives did that, then the person came and said, okay, I was there, but I didn't murder the person. So again, it wasn't a confession. It was just a changing of the story, just like here. And the California courts upheld it. And then this Court, in a decision by Judge Kristin with Judge Reinhart and now Chief Judge Thomas, upheld that just a few years ago. And with regard to his May's specific claim that his statements to the detectives were involuntary, he said that reasonable jurors could disagree that inculpatory statements were coerced. This is 807-F3D-968, note 4. Just as in May's, I think that's probably enough to get a case certified. Obviously, that standard meets the requirement to get certified, but it actually fails EPA by its own terms, because if reasonable jurors can disagree, then this Court should defer to the Nevada courts. And let me answer a few more of your other questions. Roberts, that gets into the, I mean, the State court made its determination that it was voluntary, but it made that determination after a partial hearing. And that's not actually accurate, Your Honor. I think, first of all, there was three hearings. There was three hearings, and it's only that third hearing that Rose focuses on in his – in his – there was actually three hearings. Rose focuses on the third one, because the third one, as the Court's well aware, based on the briefing, kind of went off the rails, as you can tell from the briefing. But that was actually – But, but, but Rose also tells us that the problems with the earlier hearings is that the States or the prosecution's position hadn't been consistent with regard to what record was made of the examination by Mr. Moore. No, no. Actually, Your Honor, so I'll go through the hearings. But I do want to address one other thing that – in response to your first question, before I forget it. Sorry, Your Honor. With regard to – well, I'm sorry. I'll just address the – well, with regard to your concern about – and we heard it again this morning – Rose seems to be almost making a facial attack on the ability to use these kind of statements that are – that are gotten in the context of a lie detector examination, because he says you can't ever give the context, because just like here, a defendant is never going to want to allow that context to come out. The problem with that is, as I think it was you, Your Honor, that said earlier, the problem with that is he can't point to any Supreme Court case under EPA that says that you just facially can't ever bring in these kind of statements. And, in fact, as we see from the Mays case, the California courts allow it, the Nevada courts have allowed it since 1976 in the Paulette case, and the Nevada courts relied on an Oregon case just from 1974. So many of the states in the Ninth Circuit allow it. The U.S. Supreme Court doesn't say you can't do it. So this fact that you can't refer to the context as some sort of – I mean, I don't understand – he can't succeed on a facial attack, and he hasn't shown how anything here in this – he hasn't shown how the Nevada courts' judgment, which is a very factual judgment, a very contextualized judgment, the Nevada courts have reached – because what the Nevada courts apply is a totality of circumstances test. We know that from the Paulette case and from the Passama case. In the Passama case, they didn't allow it. In the Paulette case, they did allow it. Here, they did allow it. So under EPA, without U.S. Supreme Court authority on point, I don't know how this Court could reverse that. But let me respond to the three hearings. Roberts. Just to go back for a second. With respect to the transcripts and the selected redactions in the prosecution's transcript, do you agree that that redacted transcript was misleading? No. No, not at all. This is a little bit of a damned if you do, damned if you don't situation, I think. Now we're hearing Rose say, oh, I wanted them to hear that whole context. I wanted to hear that – or I couldn't provide that context. But at the – obviously, at the trial, Rose was very clear. If you look at excerpts of record 1201, Rose emphasized in a brief to the Court the huge potential prejudice of the jury learning that Mr. Rose took a lie detector examination. At the first trial, he was actually – the court – the judge said, listen, if you want to bring in that context, you can. It's up to you to open the door. But it's up – you get a choice as to whether you want to do that. And of course, Rose didn't do that because a defendant rarely – I don't know of any defendant ever wants a jury to know that they took a lie detector examination and failed. And Nevada law says that's fine. You don't have to allow that in. But – Did he fail the lie – I don't think he failed the lie detector test. Well, according to the – according to the testimony at the second dental hearing, what the – what Mr. Moore said is I had told him that some of the results seemed to indicate that you were being deceptive, was what Mr. – what Mr. Moore said he was going to testify about at the second dental hearing. And so let me – let me describe these three hearings because I do want to – I do want to respond to that, Your Honor, this idea that he didn't get a hearing. What happened was at the first trial, they're having the trial. Remember that Rose was representing himself. They send out the jury and Rose says I want to – I want to make a motion to not have these statements come in. And there's a hearing at the first trial. This is excerpts from record 1023 around those pages where the judge at the first trial discusses it and they have argument back and forth. And then they – the judge denies his motion to suppress, goes forward, Rose testifies – I mean, Moore testifies, Rose has an opportunity to cross-examine Moore. Then, as you all know, that he's acquitted of the charges on the two girls and the other – the other two girls is hung, jury. And so then before the second trial, Rose now with counsel files a motion. This is excerpts of record – files a motion, excerpts of record 209 and following pages and says I want to have a – I want to have a – I want you to suppress those statements again because they're involuntary. They have a significant hearing in front of the same district court judge that sat over the first trial. And the district court judge after the hearing says I don't want to – I'm not going to suppress the statements because I think they were voluntary. Part of the reason is because they're collaborated by this detective. Importantly, Rose's counsel at the time says I want to have an evidentiary hearing. And the judge – remember, this is the judge that sat through the whole first trial, so she's heard all this before. And the judge says we don't need to have an evidentiary hearing. I've already sat through the whole trial. I've heard all this trial. I've – you know, she had already heard Rose cross-examine Moore. She'd heard all of it. So she said we don't need to have an evidentiary hearing. So she didn't have an evidentiary hearing. And I want to point out, really that's what Rose's argument devolves to, is that I needed to – Dinno requires me to be able to have an evidentiary hearing. But again, there is no clear Supreme Court authority that says you have to have an evidentiary hearing, especially in circumstances like this, where the judge had actually heard all the testimony. So this is – this judge was in a very unique situation. And then – And what is the – sort of the dispute as to whether there's a confession involved here? Whether – well, I don't – I don't think there's any dispute. You mean during – from this testimony that he gave to Moore? Yeah. I don't think anybody – this was never used by the prosecution as a confession. That's why – that's why Rose points out that nobody disagreed these four stories were fake. It's basically – the point was that – he changed his story. He gave divergent testimony. That was the point of this. So nobody was saying that he actually did the two things that he ended up saying he did. That was – it wasn't presented to the jury that way. So I don't – I don't see – I don't think anybody saw this as a confession, Your Honor, Rose or the prosecution. If Crane gives us a rule saying that a defendant is allowed to put in the context of a confession, would that rule apply here, even though this wasn't, as you describe it, a confession? I don't – no, no. Number one, it wasn't a confession. But number two, I don't think the rule would apply here because it's too generalized, you know, especially under APPA. I guess I'm – if you layer on APPA, again, you've got at least three of the states. I didn't do a comprehensive research to see if more of the – I'm sure more of the states in the Ninth Circuit probably allow it. Three of them, California, Nevada, Oregon, all allow this sort of testimony. And, of course, the U.S. Supreme Court has never said you can't. The question I'm posing is not about allowing the testimony, either because you – there's a ruse or because it's – you can debate whether it's voluntary. The additional argument that being – is being made is that this is presented to the jury without letting me have a – the opportunity to give them the full context. The redacted statements leave out a whole lot of the dialogue leading up to me making the statements that are being offered up as evidence against me, and I've got the right to put it all into context. Now, Rose has argued that Crane is the Supreme Court case that gives him the right to put into the context, and I'm trying to see if you're distinguishing Crane because this wasn't actually a confession. I think there would have to be one of two tests, Your Honor. One test would be you just can't ever bring this stuff in because you – because a defendant, just like Mr. Rose, is never going to want to get into that. Mr. Rose was – keep in mind, as I've said, excerpts of record 1025, excerpts of record 1201, Mr. Rose was given an opportunity to, quote, bring in this context if he wants to. Now he pretends like he wanted to bring in that context. He never wanted to bring in that – and a defendant never will want to bring in that context. So you either have to have a rule that says you're just never going to be able to bring in this kind of testimony. That can't be right, Your Honor, because there's no U.S. Supreme Court authority on point and there's – there's State court cases that allow that. I think the actual rule is what the Nevada courts apply, and that's the totality of the circumstances balancing test, and that's what the Nevada courts applied here in three different hearings, Your Honor. They applied three – it's a very factual, contextual hearing, and it's just very difficult for a defendant to win under EPA and that sort of thing. Roberts, I want to make sure I know what Nevada decision you're talking about here. I mean, I'm speaking not just about the admission of the statements in the first place. There's with that the corollary. If the statements are going to come in, I have to be allowed to put them into the full context of what happened leading up to that. But you see what I'm saying, Your Honor? I think the problem with trying to isolate those two things and make them two separate things is that a defendant is always going to have exactly the same argument that Mr. Rose has. Sure, they'd rather not have the confession come in in the first place, but if it does, defendants argue in the alternative all the time, which is that if you're going to admit this evidence against me, I'm allowed to put it into the context which will explain to the jury why you shouldn't take those statements literally. But to be clear, Mr. Rose never argued that until now. He's never argued that until his habeas pursuance. He never argued that to the district court. Well, which gets us to all the other arguments with regard to when it was that Rose's counsel knew about the full context. I mean, the redacted statements that were submitted, as I understand it, were not submitted with anything that explained they were redacted statements, so. And I do want to address that real quick, because I think that's a little bit deceptive. I mean, Mr. Rose and his counsel knew that this was given in the context of a giving of a lie detector examination. They knew that if a lie detector examination, they knew that the portions about the lie detector examination had to have been taken out of those. Otherwise, they would have, this is what I meant by damned if you do, damned if you don't. Otherwise, we'd be here arguing today that they were allowed to put the context in there. They were allowed to tell the jury that he had taken a lie detector examination and been told that his responses weren't measuring up. And so they knew that that was missing. I mean, there's nothing, I've looked, I don't see anything on the record about that, but I don't know how we can imagine that Mr. Rose's counsel didn't know that the transcript that was given to the jury, I mean, if you look at the comparison that Mr. Rose has helpfully provided in these habeas proceedings, the stuff that's gone is the stuff about the lie detector test. No, no, that's not really true. There's a lot, I look at the reply brief, for example, on page, starting on page 7, they give us a comparison, which I haven't independently verified, of a redacted transcript and unredacted transcript. And leading, I mean, just look there. There are paragraphs missing where the word paragraph, or rather the word polygraph is never mentioned. No, but if you look, Your Honor, on page 7, he says, What you're doing is you're giving me something for me to explain away what's occurring on the charts. Again, that's a reference to the polygraph. And so, and I think, you know, again, we can, it is possible that you can quibble here or there with what was taken out, but it's pretty clear to me, and I urge you and I urge the Court to look at it, like what's, the stuff that's missing and the stuff that's there is, is, the way they were trying to do was just take out, not just obviously take out the word polygraph, because Mr. Rose would have never been happy with just that, but they were trying to take out and make sure that Mr. Rose, there was no reference at all that could be considered by Mr. Rose to be referring to the fact that there's a polygraph. I think that's what happened. It's not like it was a mistake that this stuff was taken out. That's the way Mr. Rose presents it. I just have a question. Do you want to have an opportunity to brief this in writing, the uncertified issues? I can, Your Honor. I could, I could address it. I know we're over time. I don't think you're talking so quickly and trying to cram and you're over your time and it's like, I don't know if, well, it's up to you, but if you want the uncertified issues, we will, Your Honor. I think we've been ordered to, to, to provide a brief within three weeks, I think, from today. So we'll do that. If the court would like, I can, I can provide a few key points on the uncertified issue that I think it may maybe allow you to, to put some context for Mr. Rose's response. Briefing too, which might be just as helpful, if not more. Yeah. So I can, I can sit down if you, if the court would prefer, or I can, a few minutes, I can address the, the first uncertified issue, if you'd like. It's up, leave it up to the court, Your Honors. I just know that we're getting, we're sort of slipping and sliding past each other in some of these. Now, to be clear though, all the, all the stuff that I've just been discussing here is obviously with relation to the certified issue, which there won't be any more briefing on. But I think, I think I've addressed most of it. First of all, if there's any questions on that, that I've left unresolved, I'd be happy to respond to them. And then I guess the second question. I, I, I want to give you a chance, because they, they start to blur together. So what we've talked about in the certified issue, I've made references to and realized that you haven't had a chance to respond in a comprehensive fashion to the arguments with regard to, to Mr. Moore's testimony regarding the polygraph testing and the whole thing about the allegations that defense counsel didn't know until late what the tape said and so forth. And I, I want to hear what you have to say about that. But probably in a more organized, not squeezed in fashion. So speaking just to myself, I would urge you to, to respond or take advantage of the opportunity given to you in the order to respond in writing. But, okay. So just so I'm sure, because it sounds, I'm a little confused now. It sounds like you're saying that in this, in this, I think what I may be hearing is that in the supplemental briefing, you would like to hear more about the, about the certified issue. Is that correct? For example, issue 4 seems to relate to the polygraph. Mr. Moore, Mr. Moore, I think, he was the polygraph operator, his background and so forth, and so there's overlap in my mind between issues 1 and 4, because it speaks to what the impact of the alleged misconduct, or not misconduct, but the alleged error was. So, no, I think you probably should focus in the limited space we've given you on the uncertified issues. But in trying to respond to us today on the certified issue, we've tiptoed across the line to some of the others because there's overlap. And I'd like to hear what you have to say with regard to those uncertified issues, including where there's overlap. Today, Your Honor, correctly. Is that correct? Right, right. You'd like me to address a little bit there, or in the here and now, because I'd like to have it in an organized fashion where you get a chance to lay it out. So, it sounds, so we'll just address the uncertified issues in the briefing, Your Honor, is that what you prefer? Yes. But as Judge Clifton pointed out, issue 1, which was certified, and issue 4, which is uncertified, bear on each other. So, you probably will be wanting to address it. I think I understand what you're saying. To the extent that there's some overlap on, I think, especially the second and third issue, I think do, I mean, in some sense, they're very related to the certified issue. And so, you're saying some of that may bleed over and we're allowed to brief on that. Don't constrain yourself. Okay. Thank you, Your Honor. I understand. I appreciate you explaining. Thank you, Your Honors. And thank you. I certainly don't have any problem with addressing the uncertified issues according to the Court's briefing schedule. But I would like to point out that almost all of what the States address today has to do with the certified issue, which they've had a fair opportunity to address already, and that much of what is now being said is being said for the first time in the history of these proceedings. I mean, our claim has always been the same about the different aspects for why this statement was improperly admitted. I've heard the State mention a case called People v. Mays that I don't see anywhere in their answering brief. I don't know exactly what that case says, although it appears from the discussion that I think it involves this conflating of the threshold admissibility versus admitting the whole context of the case. There's also an argument being made now that either Rose shouldn't have or didn't actually want the polygraph evidence admitted at his trial. That's something they haven't raised before. Again, whatever prejudicial effect might have come in from knowing about this situation, then no explanation at all, which is what he was stuck with the way the evidence was presented at the trial. Now, we have, of course, read your briefing. Is there sort of just a quick answer? Is there any Supreme Court precedent that addresses the prosecution's use of non-confessions to make them appear to be false confessions? Supreme Court or federal law? Off the top of my head, I can't think of a Supreme Court case. I don't think insofar as the issue is the application of Crane v. Kentucky, there should be any difference. It's still a statement by the defendant which the prosecution is using as inculpatory evidence. So in that sense, it's essentially the same thing. So when we step back and look at the certified issue and the question of standard of view and whether there was an abuse of discretion here, if there is no case directly precedent, directly on point, either Supreme Court or federal, where does that leave us? I would say we do have a case on point, because the principle that applies. You're saying an analogous case. You're saying Crane, that we can be informed by Crane. It illuminates, even though it's not directly our case. I would say that Crane is directly on point. I think we're, you know, we – a confession is a statement by the defendant that the prosecution uses against him as inculpatory evidence. And that's what they did with these statements. I mean, in a sense, it's even more troubling, because we have statements that everybody agrees are false. So the question isn't whether he made false statements, but why he made them. And again, the way the prosecutor is setting this up is the only reason he could have said this was it's because you're a child molester, you have consciousness of your guilt, when there was another explanation that Mr. Rose was unable to provide. And just one last thing, if I could address it. You know, sort of – I think the State several times raised this darned-if-you-do, darned-if-you-don't situation that Mr. Rose might be in, but that's not his fault. I mean, if there's – if where we end up with is there's just no fair way to admit the statement without unfairly prejudicing Mr. Rose, then the statement shouldn't be allowed in at all. Mr. Rose didn't create the situation the State did. Ginsburg. All right. Thank you, counsel. Rose v. Baker will be submitted, and the session of the Court will be adjourned for today. We're not submitting that briefing yet to Congress. Okay. I'm going to vacate submission of Rose v. Baker pending the additional supplemental briefing that we're awaiting. Thank you very much, counsel.
judges: Wardlaw, Clifton, Katzmann